1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10
11

JAMES G. BIRKHOLM and DEANNA L.
BIRKHOLM, husband and wife,

Case No. C05-5481RJB

12

Plaintiffs,

13

v.

14
15
16
17

WASHINGTON MUTUAL BANK, F.A., JP
MORGAN CHASE BANK, formerly known
as Chase Manhattan Bank, as Trustee for
Asset Backed Securities Corporation Home
Equity Loan Trust 199-LB 1, and
NORTHWEST TRUSTEE SERVICES,
INC.,

ORDER ON MOTION OF
WASHINGTON MUTUAL
BANK FOR JUDGMENT
ON THE PLEADINGS
FOR THE 2nd, 4th, 5th and 8th
CAUSES OF ACTION OF
PLAINTIFFS'
COMPLAINT

18

Defendants.

19
20

     This matter comes before the court on Motion of Washington Mutual Bank for Judgment on the

21

Pleadings for the 2nd, 4th, 5th and 8th Causes of Action of Plaintiffs' Complaint.  Dkt. 16. The court has

22

considered the pleadings filed in support of and in opposition to the motion and the file herein.

23

PROCEDURAL HISTORY

24

     In their complaint, plaintiffs James G. Birkholm and Deanna L. Birkholm (the Birkholms) alleged

25

that, in November of 1998, they obtained from Long Beach Mortgage a loan secured by a first mortgage

26

deed of trust upon their residence, and the deed of trust was subsequently assigned to Washington Mutual

27

Bank, F.A. (Washington Mutual).  Plaintiffs allege that, on September 15, 2003, they entered into a Loan

28

Modification Agreement with Washington Mutual, which provided that the interest rate was increased to

12.45% and that the principal balance was increased by $49,497.32 to cover unpaid interest, and costs and expenses, resulting from the Birkholms' default in payments.  Dkt. 1.  The complaint also alleges that the Birkholms offered to pay the taxes on the property directly, but were told that this would confuse matters and it would be better that the funds be provided to Washington Mutual, which would make the tax payment.  The complaint alleges that plaintiffs paid an additional $10,896.67 to Washington Mutual on August 1, 2003, with the understanding that this money would be applied to unpaid real property taxes and penalties, attorney fees, and property inspection fees; that on August 25, 2003, Washington Mutual posted the payment to the Birkholms' loan transaction account but did not apply the funds to taxes, fees, expenses, interest or principal; that the Birkholms made the October, November, and December 2003 payments to Washington Mutual; that Washington Mutual established an escrow account, without notice to the Birkholms, and applied the October, November and December 2003 payments to the escrow accounts; and that the escrow funds were applied to late charges, corporate advances, reimbursement of Washington Mutual for alleged force-placed insurance payments, property inspection fees, payoff statement fees, and principal curtailment.  The complaint alleges that the Birkholms have repeatedly attempted to obtain an accurate accounting from Washington Mutual as to how the $10,896.67 was applied, but have not been successful.  The Birkholms contend that Washington Mutual's errors resulted in extra costs to the Birkholms and a negative credit report.  The complaint alleges that, on April 26, 2005, Northwest Trustee Service, Inc. Filed a notice of Trustee Sale and set the sale for July 29, 2005.

     In their complaint, the Birkholms allege that Washington Mutual (1) violated 12 U.S.C. 2605(e) by failing to make appropriate corrections in their account within 60 days, by failing to provide them with a statement of reasons why it believed the account to be correct in light of apparent and admitted errors, and by failing to protect the Birkholms' credit during the 60 day period from the Birkholms' written request of March 8, 2004; (2) violated 12 U.S.C. § 2609(b), Limitation on requirement of advance deposits in escrow accounts, by failing to provide an itemized statement of charges anticipated to be paid and the anticipated payment dates within 45 days of establishment and failing to refund the surplus in the account; (3) breach of contract for failing to apply the $10,896.67 as directed; (4) negligence in administering the trust funds it held from the Birkholms and misappropriation of payments, in violation of its duty of care to the Birkholms; (5) breach of fiduciary duty by disbursing funds for its own benefit, in violation of the

agreement between the parties; (6) conversion of funds held in trust for the Birkholms by converting to its own use of at least $8,000; and (7) breach of the Washington Consumer Protection Act. Dkt. 1. The Birkholms also request that the court enjoin Washington Mutual from sale pursuant to RCW 61.24(1) and (2). *Id.*

On June 26, 2006, Washington Mutual filed a motion, requesting that the court dismiss the following claims: (1) the Birkholms' cause of action under 12 U.S.C. § 2609 (b), because the statute provides no private right of action; (2) the claim for negligence as barred under the economic loss rule because tort damages are not available for a breach of contract claim; (3) the claim for breach of fiduciary duty because a lender owes no fiduciary duty to a borrower; and (4) the claim for violation of the Washington Consumer Protection Act because the acts complained of in the complaint were isolated to these plaintiffs and there was no effect on the public interest. Dkt. 16, at 4.  The motion was properly noted for consideration on the court's July 21, 2006 calendar. *See* Local Rule CR 7(b) and (d).

On July 20, 2006, the Birkholms filed a response opposing the motion to dismiss, arguing that (1) there is a private right of action under 12 U.S.C. § 2609 because this provision would be superfluous and ineffective without a private cause of action; (2) plaintiffs have a cause of action for negligence because the $10,896.67 payment the Birkholms made to Washington Mutual was a condition precedent to the loan modification contract, not a part of the contract; (3) Washington Mutual owes the Birkholms a fiduciary duty because Washington Mutual had a special relationship with the Birkholms when it agreed to receive funds to pay the taxes on the property; and (4) the Birkholms have a cause of action under the CPA because impound accounts for taxes and insurance are commonplace in the secured real estate industry, and the potential for repetition is significant. Dkt. 17.

The Birkholms' response was not timely filed, but Washington Mutual's counsel informed the court by telephone on July 25, 2006, that he did not object to the court's considering the late-filed response, and did not intend to file a reply.  Accordingly, the court has considered the pleadings filed by the parties and the remainder of the record in ruling on Washington Mutual's motion.

<u>STANDARD FOR MOTION TO DISMISS</u>

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).  Under Fed.R.Civ.P. 12(b)(6), a court may

dismiss a claim if it appears beyond doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983), *citing Conley v. Gibson*, 355 U.S. 41, 45-56 (1957). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). However, a plaintiff must plead factual allegations with specificity; vague and conclusory allegations of fact fail to state a claim for relief. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3rd Cir. 1988). If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d at 1300. If the claim is not based on a proper legal theory, the claim should be dismissed. *Id.*

<u>DISCUSSION</u>

**1. Private Cause of Action under RESPA**

In their complaint, the Birkholms allege that Washington Mutual failed to provide the Birkholms with an itemized statement of charges anticipated to be paid and the anticipated payment dates, within 45 days of the establishment of the escrow account, and failed "to refund [the] surplus in the account." Dkt. 1, at 6. Washington Mutual requests that the court dismiss the Birkholms' cause of action under 12 U.S.C. § 2609, claiming that there is no private right of action under Section 2609.

Under 12 U.S.C. § 2609(c)(1)(A), a provision of the Real Estate Settlement Procedures Act (RESPA), a loan servicer that establishes an escrow account is required to provide the borrower with a statement outlining the estimated taxes, insurance premiums, and other charges expected to be paid during the first 12 months after an escrow account is established. Under 12 U.S.C. § 2609(c)(1)(B), the loan servicer must provide this statement at closing of the mortgage loan, or no later than 45 days after the loan servicer establishes the escrow account. The loan servicer is required to provide annual statements to the borrower thereafter. 12 U.S.C. § 2609(c(2). If the loan servicer fails to comply with the requirements of 12 U.S.C. § 2609(c), 12 U.S.C. 2609(d) authorizes the Secretary of Housing and Urban Development, *see* 12 U.S.C. § 2602(6), to assess penalties.

12 U.S.C. § 2609 does not by its terms provide for a private right of action. The Circuits are split

on whether Congress intended to vest borrowers with a private cause of action for violation of Section 2609.  *See State of La. v. Litton Mortgage Co.,* 50 F.3d 1298, 1301-02 (5th Cir. 1995), and *Allison v. Liberty Sav*. & Loan Ass'n of Detroit, 695 F.2d 1086, 1091  (7th Cir. 1982)(no implied private cause of action for violation of Section 2609); *Vega v. First Federal Sav. & Loan Assoc*., 622 F.2d 918, 925, n. 8 (6th Cir. 1980)(Congress intended to create private cause of action for violation of Section 2609).

To determine whether a statute provides for an implied private right of action, the court looks to whether Congress intended to create the private remedy asserted.  *Suter v. Artist M*., 503 U.S. 347, 364 (1992).  The burden of demonstrating Congressional intent to create an implied right of action lies with the party asserting an implied right of action.  *Id.* at 363-64.  To determine whether Congress intended to create a private remedy, the Supreme Court, in *Cort v. Ash,* 422 U.S. 66 (1975), set forth a four-part test for determining whether an implied private right of action exists: (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78.

*Members of Class for Whom Benefit of Statute was Enacted.*  The purpose of RESPA was to effect certain changes in the settlement process for residential real estate that will result (1) in more effective advance disclosure to home buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) in significant reform and modernization of local record-keeping of land title information.  12 U.S.C. § 2601.  The Birkholms, as home buyers, were members of the class for whom the special benefit of the statute was enacted.

*Explicit or Implicit Indication of Congressional Intent.*  A close review of the statutory scheme, however, shows that there is no explicit or implicit indication of congressional intent to create a private remedy.  Other sections of RESPA,  U.S.C. §§ 2605 and § 2607 provide for a private right of action.  RESPA provides for other remedies for violation of RESPA's provisions:  12 U.S.C. § 2607(d)(4) provides for an injunctive action to be brought by the Secretary, or the Attorney General or insurance

1   commissioner of any state; 12 U.S.C. § 2609(d) provides monetary penalties to be assessed by the

2   Secretary of Housing and Human Development.  Congress knew how to provide for remedies for violation

3   of RESPA, and did provide varying remedies for violation of specific sections.  Plaintiffs have not shown

4   that Congress intended–either explicitly or implicitly–to provide a private right of action for violation of 12

5   U.S.C. § 2609.

6          *Private Remedy Consistent with Purposes of Statutory Scheme.*  One of the purposes of RESPA is

7   to effect a reduction in the amounts home buyers are required to place in escrow accounts established to

8   insure the payment of real estate taxes and insurance.  12 U.S.C. § 2601.  12 U.S.C. § 2609 addresses

9   money held in escrow accounts, places limits on the amount of money that the lender can require, and

10  provides for notice to the borrower of the amounts held in escrow and the purposes for which the money is

11  held by the lender.  The excess money in the account remains the borrower's money, even though the

12  borrower may not have use of that money while it is held in an escrow account.  Excess money held in an

13  escrow account may result in hardship to the borrower who is required to advance money before it is

14  necessary; the borrower may also suffer from not being able to use that money as the borrower wishes.

15  Congress could reasonably have determined that a penalty assessed by the Secretary of Housing and

16  Human Development would discourage lenders from requiring a borrower to pay too much into an escrow

17  account, whereas a private remedy would only address the relatively minor losses and hardships that an

18  individual borrower would experience.  Further, the essence of the Birkholms' claim under this section is

19  not that Washington Mutual required them to place too much money in their escrow account; the claim is

20  that Washington Mutual misapplied the amount in the escrow account.  Such a claim would be extending

21  the purpose of Section 2609 beyond what Congress intended when it enacted this section of RESPA.

22         *Cause of Action Relegated to State Law.*  It does not appear that there is a state cause of action *per*

23  *se* available for a borrower who has not received the statements provided for under 12 U.S.C. § 2609.

24  Nonetheless, a plaintiff may plead state claims related to misapplication of funds allegedly held in an

25  escrow account; evidence regarding the amount placed in the escrow account, the agreement between the

26  parties as to the application of the money in the escrow account, and the disbursement of amounts from the

27  escrow account–all at the heart of the dispute in this matter–may provide the basis, and evidentiary

28  support, for the state law claims.  Plaintiffs are not without a state law remedy, even if there is no private

1  right of action under 12 U.S.C. § 2609.

2      A review of the statutory scheme show that Congress did not intend to provide a private right of

3  action for violation of 12 U.S.C. § 2609.  The court should grant Washington Mutual's motion for

4  judgment on the pleadings, and should dismiss the Birkholms' claim under 12 U.S.C. § 2609.

5      **2. Negligence**

6      In their complaint, the Birkholms contend that Washington Mutual negligently administered the

7  funds it held for them and misappropriated payments in violation of its duty of care to them.  Dkt. 1, at 7.

8  Washington Mutual requests that this claim be dismissed because the claims are based upon breach of

9  contract, not tort law.  The Birkholms contend that the $10,896.67 payment they made to Washington

10  Mutual was not part of the loan modification agreement, but was a condition precedent to the loan

11  modification agreement, and that there was no agreement between the parties to establish an escrow

12  impound account at that time.

13      Negligence is an action based in tort.  *Lund v. Caple*, 100 Wn.2d 739, 744 (1984).  Generally, a

14  breach of contract does not give rise to an action in tort.  *Am. Nursery Prods. V. Indian Wells Orchards*,

15  115 Wn.2d 217, 230 (1990).  A contract can provide the basis for a tort claim only if a duty exists

16  independently of the performance of the contract.  *Id.*

17      Washington has adopted the economic loss rule, which bars claims for negligent misrepresentation

18  when a contract allocates liability.  *See Griffith v. Centex Real Estate Corp.,* 93 Wn.App. 202, 211 (1998).

19  The economic loss rule creates a line between tort law, which is meant to protect citizens and their

20  property by imposing a duty of reasonable care, and contract law, which is meant to enforce expectations

21  created by agreement. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,* 124 Wn.2d 816, 821

22  (1994).  The rule is intended to prevent disproportionate liability and allow the parties to allocate risk

23  through contract. *Berschauer/Phillips,* 124 Wn.2d at 822.

24      Washington Mutual's motion to dismiss this claim is based upon the pleadings filed in this matter.

25  The court does not have before it any documents or other evidence related to the transactions between the

26  parties.  At this point, the court is unable to determine whether, and to what extent, the parties allocated

27  risk through contract.  The court should deny without prejudice Washington Mutual's motion to dismiss

28  this claim.

### 3.  Breach of fiduciary duty

In the complaint, the Birkholms contend that Washington Mutual agreed to and accepted their funds to be held in trust for disbursement in accordance with the parties' agreement; that they placed their trust and confidence in Washington Mutual to exercise care and diligence in handling the funds being held in trust; and that Washington Mutual violated its fiduciary duty to the Birkholms by disbursing funds for its own benefit, in violation of the agreement between the parties.  Washington Mutual requests that the court dismiss this claim because, as a lender, Washington Mutual does not owe a fiduciary duty to the Birkholms.

The general rule in Washington is that a lender is not a fiduciary of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists.' *Miller v. U.S. Bank of Wash.,* 72 Wn.App. 416, 426-27, 865 P.2d 536 (1994).  Circumstances of the particular dealings between the parties are determinative of whether such a relationship exists.  *Interstate Production Credit Association v. Line R. Machugh*, 61 Wn.App. 403, 411 (1991).  In a fiduciary relationship, one party occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for.  *Liebergesell v. Evans*, 93 Wn.2d 881, 889-90 (1980).

Washington Mutual contends that the Birkholms have not alleged any facts that would suggest a special relationship existed between the parties, nor have they suggested that the relationship between the parties was anything other than that of borrower/lender.  The complaint alleges that the Birkholms offered to pay the taxes for the property on their own, but that Washington Mutual told them that this would confuse matters and that it would be better that the funds be provided to Washington Mutual, which would make the tax payment.  At this point, at least, there are issues of fact as to whether a fiduciary relationship was created by Washington Mutual's alleged representations to the Birkholms that it would receive and disburse the $10,896.67.  Washington Mutual's motion to dismiss this claim should be denied.

### 4.  Consumer Protection Act

The Birkholms allege that Washington Mutual violated  Washington's Consumer Protection Act (CPA).  Washington Mutual requests that the court dismiss this claim because the complaint has not alleged facts sufficient to establish that the conduct at issue had an effect on the public interest.

Washington's Consumer Protection Act (CPA) prohibits unfair competition.  RCW 19.86.020.  To prove a violation of the CPA, a claimant must show: (1) an unfair or deceptive act; (2) the act occurred in

the conduct of trade or commerce; (3) the act has an impact on the public interest; (4) injury to the claimant; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wn.2d 778, 780 (1986). The question of whether particular actions give rise to a violation of the CPA is reviewable as a question of law. *Keyes v. Bollinger*, 31 Wn.App. 286 (1982). Ordinarily a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d at 790. However, a private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. *Pacific Northwest Life. Inc. Co. v. Turnbull*, 51 Wn.App. 692 (1988)(*citing Hangman*).

In order to determine whether a breach of a private contract affects the public interest, the court considers a number of factors: (1) Were the acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it? *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d at 790-91.

In their response, the Birkholms state as follows:

> In this case, impound accounts for taxes and insurance are common place in the secured real estate industry and is a general pattern or course of conduct; the potential for repetition is significant since it is not uncommon to have funds that are not expended that could be allocated to debt of the Defendant or in other self-serving fashion. WAMU states there was an accounting dispute in its motion. Certainly all trust funds have accounting issues and could easily lead to misapplication of funds which would have a significant public impact.

Dkt. 17, at 6.

The Birkholms' argument that the conduct at issue in this case affects the public interest because the conduct is capable of repetition is weak at best. However, it does not appear that the court should dismiss this claim at the pleading stage. The Birkholms should have the opportunity to develop evidence to support this claim. The court should deny Washington Mutual's motion to dismiss this claim.

Therefore, it is hereby **ORDERED** that the Motion of Washington Mutual Bank for Judgment on the Pleadings for the 2nd, 4th, 5th and 8th Causes of Action of Plaintiffs' Complaint (Dkt. 16) is **GRANTED**

1    **IN PART**, as follows: The Birkholms' cause of action under 12 U.S.C. § 2609(b) is **DISMISSED**.  The

2    motion is denied without prejudice with regard to the negligence claim, the claim for breach of fiduciary

3    duty, and the claim under Washington's Consumer Protection Act.

4         The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

5    party appearing *pro se* at said party's last known address.

6         DATED this 26th day of July, 2006.

7

8         *Robert J. Bryan*

9         Robert J. Bryan
          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28